1
2
3
4
5
6
7
8                        UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ALFREDO GOMEZ,                            No. 2:20-cv-0198 AC P

12                   Plaintiff,

13        v.                                   ORDER AND FINDINGS AND
                                               RECOMMENDATIONS
14   CALIFORNIA DEPARTMENT OF
     CORRECTIONS AND
15   REHABILITATION, et al.,

16                   Defendants.

17

18

19        Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983 and

20   has requested authority pursuant to 28 U.S.C. § 1915 to proceed in forma pauperis.  ECF Nos. 1,

21   2.  This proceeding was referred to this court by Local Rule 302 pursuant to 28 U.S.C.

22   § 636(b)(1)(B).

23        For the reasons stated below, plaintiff's motion to proceed in forma pauperis will be

24   granted.  In addition, the undersigned will recommend that this action be dismissed without leave

25   to amend for lack of jurisdiction.

26   ////

27   ////

28
                                             1

I.    IN FORMA PAUPERIS APPLICATION

Plaintiff has submitted a declaration that makes the showing required by 28 U.S.C. § 1915(a).  See ECF No. 2.  Accordingly, the request to proceed in forma pauperis will be granted.

Plaintiff is required to pay the statutory filing fee of $350.00 for this action.  28 U.S.C. §§ 1914(a), 1915(b)(1).  By this order, plaintiff will be assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1).  By separate order, the court will direct the appropriate agency to collect the initial partial filing fee from plaintiff's trust account and forward it to the Clerk of Court.  Thereafter, plaintiff will be obligated for monthly payments of twenty percent of the preceding month's income credited to plaintiff's prison trust account.  These payments will be forwarded by the appropriate agency to the Clerk of Court each time the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full.  28 U.S.C. § 1915(b)(2).

II.    SCREENING REQUIREMENT

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1)-(2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact.  Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984).  The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless.  Neitzke, 490 U.S. at 327.  The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis.  See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989); Franklin, 745 F.2d at 1227.

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (brackets added)

(quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing

Twombly, 550 U.S. at 556). In reviewing a complaint under this standard, the court must accept

as true the allegations of the complaint in question, Hosp. Bldg. Co. v. Rex Hosp. Trustees,

425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and

resolve all doubts in the plaintiff's favor, Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

III.    PLAINTIFF'S COMPLAINT

Plaintiff, an inmate at Centinela State Prison ("CSP"), names the California Department of

Corrections and Rehabilitation ("CDCR") and the former Secretary of the CDCR, Ralph Diaz, as

defendants in this action. See ECF No. 1 at 1, 7-8, 10. Plaintiff alleges that CDCR is responsible

for the creation and implementation of the newly created Non-Designated Programming Facility

("NDPF") housing designation throughout the state prison system. See id. at 7, 10. He further

alleges that as Secretary Diaz is ultimately responsible for the drafting, issuing and enforcement

of all policy, practice and custom of the CDCR, which presumably includes the implementation

of the new NDPF housing designation. See generally id. at 7-8, 10.

As a former gang member who has previously been attacked by gang-affiliated inmates,[1]

plaintiff alleges that he will be at risk of assault in NDPF housing because of defendants' failure

to screen out active gang members, "predators," and "sleepers" in the general population from

NDPF placement. See generally ECF No. 1 at 8-9, 17. Although plaintiff has yet to be

transferred to an NDPF, he asserts that defendants' transfer of officially inactive gang members

like himself who had been previously housed in the more protective CDCR "sensitive needs

yards" to NDPFs violates his and other similarly situated prisoners' Eighth Amendment right to

be free from cruel and unusual punishment. Plaintiff alleges that defendants are failing to

////

---

[1] Plaintiff states that since 2002, he has been granted protective custody both in jail and in prison.
This is because prior to being given protective status, he had been attacked by a prison gang. See
ECF No. 1 at 8.

"comp[ly] with their [c]onstitutional duty to protect prisoners from violence at the hands of other prisoners." See generally id. at 6, 17 (brackets added).

The complaint alleges that defendants have been put on notice regarding plaintiff's safety needs via California Code of Regulations, Title 15 § 3378.5(d). See ECF No. 1 at 8-9. As a result, defendants "knew or reasonably should have known" that inmates housed in sensitive needs yards have safety arising from their previous gang affiliation and having been previously attacked. See generally id. at 8-9.

Plaintiff seeks declaratory relief pursuant to 28 U.S.C. §§ 2201, 2202. See ECF No. 1 at 6-7, 17. He asks the court to find that defendants' failure to adequately screen-out active general population gang members, sleepers and predators from NDPF housing violates the Eighth Amendment's prohibition against cruel and unusual punishment. Id. at 6, 17 He argues that because "there is a certainty" that he will be subject to NDPF housing while in any Level III prison within the state, he is an "interested party" to this suit within the meaning of 28 U.S.C. § 2201 and, as result, has standing to seek declaratory relief. See ECF No. 1 at 8-9. He asks the court to find that housing active gang members, sleepers and predators within the NDPF constitutes cruel and unusual punishment under the Eighth Amendment because doing so fails to comply with defendants' duty to protect prisoners from violence at the hands of other prisoners. See id. at 6, 17.

IV.    ARTICLE III STANDING REQUIREMENTS

"[F]ederal courts are required sua sponte to examine jurisdictional issues such as standing." B.C. v. Plumas Unified Sch. Dist., 192 F.3d 1260, 1264 (9th Cir. 1999). To have standing, a plaintiff must plead and prove that he has suffered sufficient injury to satisfy the "case or controversy" requirement of Article III of the United States Constitution. See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 471 (1982); Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409 (2013). The case or controversy requirement ensures that federal courts do not decide questions that cannot affect the rights of litigants in the case before them, or give opinions advising what the law would be upon a hypothetical state of facts. Lewis v. Continental Bank Corp., 494 U.S. 472, 477 (1990).

1    Accordingly, the standing doctrine "requires federal courts to satisfy themselves that the plaintiff

2    has alleged such a personal stake in the outcome of the controversy as to warrant *his* invocation of

3    federal-court jurisdiction," so that "there is a real need to exercise the power of judicial review in

4    order to protect the interests of the complaining party." Summers v. Earth Island Inst., 555 U.S.

5    488, 493 (2009) (emphasis in original) (internal quotation marks and citations omitted).

6        To demonstrate Article III standing, a plaintiff must allege: (1) injury-in-fact that is

7    concrete and particularized, as well as actual or imminent; (2) that the injury is fairly traceable to

8    the challenged action of the defendant; and (3) that the injury is redressable by a favorable ruling.

9    Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 149 (2010) (citation omitted); Lujan v.

10   Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). "The party invoking federal jurisdiction

11   bears the burden of establishing these elements ... with the manner and degree of evidence

12   required at the successive stages of the litigation." Lujan, 504 U.S. at 561 (citations omitted).

13   While threatened future harm can in some instances confer standing, the injury must be "certainly

14   impending" to constitute injury-in-fact; allegations of possible future injury are not sufficient.

15   Whitmore v. Arkansas, 495 U.S. 149, 158 (1990); see also Clapper, 568 U.S. at 409 ("[A]n injury

16   must be concrete, particularized, and actual or imminent.") (citation and internal quotation marks

17   omitted). Accordingly, speculative injury is insufficient. Lujan, 504 U.S. at 565 n.2 ("Although

18   imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose,

19   which is to ensure that the alleged injury is not too speculative for Article III purposes – that the

20   injury is certainly impending.") (internal quotation marks omitted).

21       V.    DISCUSSION

22       Plaintiff lacks standing to pursue his Eighth Amendment challenge to CDCR's statewide

23   NDPF program. It is clear from the face of the complaint that plaintiff has not suffered an injury-

24   in-fact, nor is he faced with certainly impending harm. The alleged risk of harm is too

25   speculative to support standing.

26       At the time the complaint was filed, plaintiff was not housed in an NDPF unit and his

27   prison had not fully transitioned to NDPF housing. See ECF No. 1 at 9. Plaintiff alleges not that

28   he has been actually exposed to any unsafe condition, let alone concretely harmed by such

5

exposure, but that he expects to be placed in unsafe NDPF housing in the future and believes this assignment will expose him to unreasonable risk of harm. Such alleged future harm cannot support standing absent facts demonstrating that injury is certainly impending. Lujan, 504 U.S. at 565 n.2. The facts alleged here fall far short of that standard.

In Clapper, supra, the Supreme Court found that the Foreign Intelligence Surveillance Act (FISA) could not be challenged by organizations including Amnesty International who had demonstrated an "objectively reasonable likelihood" of being subjected to surveillance under the statute. Clapper, 568 U.S. at 407. The Court held that an objectively reasonable likelihood of future injury was insufficient to confer standing. Id. at 410. Accordingly, although plaintiff may reasonably expect to be housed in an NDPF and subjected to the conditions he fears, that is insufficient as a matter of law to bring the risk of future harm beyond the speculative.

The Clapper Court also found standing lacking because the plaintiffs' theory of imminent injury rested on the future actions of third parties. Id. at 414. Here plaintiff's theory of future harm rests on speculation about the implementation of the program at various institutions by various officials, the numbers of dangerous gang members and affiliates who will not be screened out at the unit(s) where plaintiff is ultimately placed, and their actions toward him. Any future harm to plaintiff depends on a chain of events that is both speculative and involves multiple third parties. Under Clapper, this is insufficient to establish standing.

Furthermore, plaintiff cannot base standing on the risk of harm to similarly situated prisoners already housed in NDPF units. The standing inquiry is personal and individualized. See Summers, 555 U.S. at 493. And as a self-represented litigant, plaintiff may not maintain a cause of action on behalf of other individuals nor seek to vindicate the rights of others. Russell v. United States, 308 F.2d 78, 79 (9th Cir. 1962) (a litigant appearing in propria persona has no authority to represent anyone other than himself.). Accordingly, "an inmate does not have standing to sue on behalf of his fellow prisoners. Rather, the prisoner must allege a personal loss and seek to vindicate a deprivation of his own constitutional rights." Weaver v. Wilcox, 650 F2d 22, 27 (3rd Cir. 1981). Plaintiff does not have standing to sue as an individual for the reasons

////

already explained, and he may not invoke the rights of others or base standing on their injuries whether actual or imminent.

For all these reasons, plaintiff lacks standing to pursue an Eighth Amendment challenge to the CDCR's NDPF program.[2] Consequently, the complaint must be dismissed.

VI.    CONCLUSION

Plaintiff's lack of standing is not a defect that can be cured by amendment. "A district court may deny leave to amend when amendment would be futile." Hartmann v. CDCR, 707 F.3d 1114, 1130 (9th Cir. 2013); accord Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000) ("Courts are not required to grant leave to amend if a complaint lacks merit entirely."). Therefore, it will be recommended that this action be dismissed without leave to amend for lack of jurisdiction.

Accordingly, IT IS HEREBY ORDERED that:

1.   Plaintiff's application to proceed in forma pauperis (ECF No. 2) is GRANTED;

2.   Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action. Plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). All fees shall be collected and paid in accordance with this court's order to the appropriate agency filed concurrently herewith; and

3.   The Clerk of Court shall randomly assign a United States District Court Judge to this action.

IT IS FURTHER RECOMMENDED that the complaint be DISMISSED without leave to amend for lack of jurisdiction. See generally U.S. Const. Art. III § 2, cl. 1.

////

---

[2] The court notes that although plaintiff's sole claim is based on the Eighth Amendment, the complaint is replete with citations to state rules, prison regulations and the like, which are allegedly being violated by the implementation of changes to the housing of sensitive needs inmates. A state's violation of its own laws does not create a cognizable federal claim. See generally 42 U.S.C. § 1983; see also Cousins v. Lockyer, 568 F.3d 1063, 1070 (9th Cir. 2009) (citation omitted). Moreover, one may not transform state law issues into federal ones by simply discussing them in federal constitutional terms. See Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1996).

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, plaintiff may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED:  May 18, 2021.


ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE