UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ALFREDO GOMEZ,

Plaintiff,

v.

CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, et al.,

Defendants.

No. 2:20-cv-0198 KJM AC P

ORDER AND FINDINGS AND RECOMMENDATIONS

Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Currently before the court is defendants' motion to dismiss plaintiff's complaint. ECF No. 25.

I. Background

A. Procedural History

Plaintiff, Alfredo Gomez, filed suit against the California Department of Corrections and Rehabilitation (CDCR) and Ralph Diaz, the Secretary of the CDCR, alleging violations of his Eighth Amendment rights. Specifically, the complaint claims deliberate indifference to plaintiff's safety as an inmate at risk of being placed in the Non-Designated Programming Facility (NDPF) at Chuckawalla Valley State Prison (CVSP). ECF No. 1. The undersigned recommended that the complaint be dismissed without leave to amend for lack of jurisdiction, finding that plaintiff

lacked standing because the alleged harm based on a potential transfer to NDPF housing was too speculative. ECF No. 7 at 5. On July 16, 2021, after an extension to file objections to the Findings and Recommendations, plaintiff filed a declaration stating he was now housed in an NDPF and that his safety had been placed in jeopardy by three separate incidents of violence in his NDPF. ECF No. 14 at 2. Based on this declaration, the matter was referred back to the undersigned. ECF No. 15 at 2. The undersigned then ordered plaintiff to file a First Amended Complaint (FAC), ECF No. 16, which he did, ECF No. 17. The undersigned screened the FAC and ordered that the case proceed on plaintiff's Eighth Amendment claims against CDCR and Diaz. Defendants have now moved to dismiss plaintiff's FAC under Rule 12(b)(6).

B. First Amended Complaint

1. Protective Custody

Plaintiff alleges that in 2002, he was placed in protective custody housing because a member of the Southern Hispanics prison gang attacked him under order from the Mexican Mafia gang (EME). Id. at ¶ 1. At the time, inmates in protective custody were designated sensitive needs inmates and assigned to Sensitive Needs Yards (SNY). Id. Plaintiff alleges that he remained in an SNY until June 28, 2021, when he was transferred to an NDPF. Id. at ¶¶ 1, 13. According to Plaintiff, despite the transfer from SNY to NDPF, the SNY designation is for life. Id. at ¶ 24(i).

2. NDPF Housing

Plaintiff alleges that an NDPF is a yard where SNY and general population (GP) inmates are housed together. Id. at ¶¶ 1, 3, 4, 15, 19. NDPF housing started as a pilot program in 2016 and continued as such until December 2017. Id. at ¶ 2. During the pilot program, there were numerous incidents of reported violence in NDPFs. Id. at ¶ 4. Despite this, the NDPF program was expanded state-wide in 2018. Id. at ¶ 5. In 2022, NDPF regulations were finally promulgated, but did not address the issues with prior violence or take steps to create protections from future violence, such as establishing screening criteria. Id. at ¶¶ 8-12.

Plaintiff further alleges that although the regulations indicate that NDPF is "an integrated housing facility or institution established for inmates demonstrating a willingness to participate in

rehabilitative programs and conform to departmental policies," and be "free from Security Threat Group (STG) influence and behavior," defendants are failing to screen individuals for willingness to participate and disassociate from STG, and are instead forcing participation under threat of disciplinary process for those who refuse such placement. Id. at ¶¶ 7, 10, 11. Plaintiff further asserts that the regulations excluding placement of certain individuals from NDPF yards achieves little to nothing where it excludes individuals who would already be ineligible for such placement due to other reasons. Id. at ¶ 12.

3. Danger or Risk of Harm to Plaintiff

Plaintiff alleges that his transfer to NDPF housing places him at grave risk of harm or death because it "allows active GP gang members the ability to attack SNY inmates such as Plaintiff" and gang code requires gang members to "[a]ttack and if possible, kill all PC/SNY inmates . . . [and] ex-gang members who have dropped-out, debriefed or been validated as inactive." Id. at ¶ 24(b)-(c). Plaintiff alleges he is an SNY inmate and gang drop out, who has been debriefed and provided adverse information about gangs to authorities. Id. at ¶¶ 1, 23, 24. Additionally, plaintiff alleges that about two weeks after he was transferred to NDPF housing, he witnessed three separate incidents in one day in which GP inmates attacked SNY inmates. Id. at ¶ 13. He also alleges that since his transfer to NDPF and through the date of the filing of his FAC, "each time a GP active gang member is placed into CVSP's NDPF he immediately attacks the first NDPF/SNY inmate he encounters, thus placing Plaintiff's safety in danger on a daily basis." Id.

4. Eighth Amendment Claims

Plaintiff sues the CDCR and Diaz, the former Secretary of CDCR in his official capacity, for deliberate indifference to his safety in violation of the Eighth Amendment. ECF No. 17 at ¶¶ 27, 29. Plaintiff alleges that CDCR is responsible for the creation and implementation of the newly created NDPF housing designation throughout the state prison system. Id. at ¶¶ 1-12, 28. He further alleges that CDCR Secretary Diaz is a proper defendant because Diaz inherited "his predesessors' [sic] policy, practice, custom, and regulations" and Diaz continued to enforce the NDPF program. Id. at ¶ 29.

5. Relief Sought

The complaint does not seek damages. ECF No. 17 at 15. Plaintiff seeks declaratory judgment in the form of a declaration that "it is a violation of the Eighth Amendment prohibition against cruel and unusual punishment for Defendants' failure to screen-out from NDPF housing active GP gang members, Southern Hispanics, Sleeprs, EME, and Predators, whom all pose a well-known and documented risk to the safety of PC/SNY inmages such as Plaintiff who is housed in an NDPF[.]" Id.

C. Motion to Dismiss

Defendants move to dismiss plaintiff's FAC under Rule 12(b)(6), arguing that CDCR has not waived sovereign immunity and therefore plaintiff's suit against CDCR is barred by the Eleventh Amendment and should be dismissed with prejudice. ECF No. 25-1 at 9. Defendants also argue that the claims against Diaz should be dismissed with prejudice because: (1) plaintiff has not alleged that Diaz was involved in his transfer or ever had any personal knowledge that plaintiff was in danger; (2) allegations that the NDPF policy is unconstitutional are insufficient to impose liability on Diaz; and (3) plaintiff has not suffered harm or identified a credible threat of harm beyond speculation. Id. at 9-16.

In opposition, plaintiff concedes that his claims against CDCR are barred under the Eleventh Amendment and that CDCR should be dismissed with prejudice. ECF No. 28 at 9. With respect to his claims against Diaz, plaintiff repeatedly asserts that (1) he is only suing Diaz in his official capacity and (2) because he is only seeking declaratory relief, he does not have to plead that he was harmed, that Diaz was personally involved, or that Diaz knew of the serious risk to plaintiff's health and safety. ECF No. 28 at 10-12, 14-15. Plaintiff argues that he has stated an official capacity claim because he has alleged that the NDPF policy violates his constitutional rights, that Diaz is a person with direct authority over and principal responsibility for enforcing the NDPF, and the constitutional violation is ongoing. Id. at 14-20.

Given plaintiff's concession with respect to CDCR, defendants' reply focuses on the Eighth Amendment claim against Diaz. ECF No. 30. Defendants argue that plaintiff's statement of the law regarding official capacity claims where a plaintiff only seeks declaratory relief is

incorrect. Id. at 3. Defendants assert that because plaintiff is seeking relief in the form of a declaratory judgment, he must still plead all the elements of an Eighth Amendment claim, which he cannot do. Id. at 3-6. Moreover, defendants contend that plaintiff's claim is moot because he has admitted in his opposition that he is no longer housed in NDPF housing and cannot, beyond speculation, claim he ever will be. Id. at 6-7.

II. Legal Standard for Motion to Dismiss under Fed. R. Civ. P. 12(b)(6)

"The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint." N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990).

To survive dismissal for failure to state a claim, a complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). It is insufficient for the pleading to contain a statement of facts that "merely creates a suspicion" that the pleader might have a legally cognizable right of action. Id. (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-35 (3d ed. 2004)). Rather, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In reviewing a complaint under this standard, the court "must accept as true all of the factual allegations contained in the complaint," construe those allegations in the light most favorable to the plaintiff and resolve all doubts in the plaintiff's favor. See Erickson v. Pardus, 551 U.S. 89, 94 (2007); Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 960 (9th Cir. 2010), cert. denied, 564 U.S. 1037 (2011); Hebbe v. Pliler, 627 F.3d 338, 340 (9th Cir. 2010). However, the court need not accept as true legal conclusions cast in the form of factual allegations, or

allegations that contradict matters properly subject to judicial notice. See Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.), as amended, 275 F.3d 1187 (2001).

Pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972). Pro se complaints are construed liberally and may only be dismissed if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Nordstrom v. Ryan, 762 F.3d 903, 908 (9th Cir. 2014). The court's liberal interpretation of a pro se complaint, however, may not supply essential elements of the claim that were not pled. Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982); see also Pena v. Gardner, 976 F.2d 469, 471 (9th Cir. 1992). A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend unless the complaint's deficiencies could not be cured by amendment. See Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987).

III. Request for Judicial Notice

As an initial matter, defendants seek judicial notice of a memorandum issued by the CDCR, titled "Non-Designated Programming Facility Expansion for 2018," dated December 12, 2017, based on incorporation by reference in the FAC. ECF 25-2 at 2. "[T]he 'incorporation by reference' doctrine . . . permits us to take into account documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'" Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005) (quoting Janas v. McCracken (In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999)). However, a defendant may only seek to incorporate a document into the complaint "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim," such that the claim necessarily depends on the document. Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 1002 (9th Cir. 2018).

Although plaintiff explicitly references the memorandum in his FAC, ECF No. 17 at ¶ 5, and does not contest the authenticity of the document, the court declines to take judicial notice because plaintiff only refers to the memorandum once and plaintiff's claim that the NDPF policy

is unconstitutional does not depend on this memorandum. Moreover, it appears that defendants offer this document to establish their versions of the facts, which they cannot do at the pleading stage. See Khoja, 899 F.3d at 1002 (defendants cannot use the incorporation by reference doctrine "to insert their own version of the events into the complaint to defeat otherwise cognizable claims)".

Accordingly, defendant's request for judicial notice, ECF No. 25-2, is denied.

IV. Claim Against the CDCR is Barred by the Eleventh Amendment

Defendants move the court to dismiss CDCR with prejudice arguing such suit is barred by the Eleventh Amendment. ECF No. 25-1 at 9. In opposition, plaintiff concedes that the claims against CDCR are barred. ECF No. 28 at 9. The undersigned agrees and therefore recommends dismissal of CDCR with prejudice. See Krainski v. Nev. Ex rel. Bd. of Regents of Nev. Sys. Of Higher Educ., 616 F.3d 963, 967 (9th Cir. 2010) ("The Eleventh Amendment bars suits against the State or its agencies for all types of relief."); Brown v. California Dep't. of Corr., 554 F.3d 747, 752 (9th Cir. 2009) (a suit against CDCR is barred by the Eleventh Amendment); see also Will v. Mich. State Dep't of Police, 491 U.S. 58, 65 (1989) (only "person[s]" may be sued for depriving civil rights under § 1983, and state are not "person[s]" within the meaning of § 1983).

V. Official Capacity Claim Against the Secretary of CDCR[1]

For purposes of § 1983, state officials sued in their official capacity for prospective injunctive relief are "persons," see Will, 491 U.S. at 71 n.10, and the Eleventh Amendment does not bar such suits, Doe v. Regents of the Univ. of Cal., 891 F.3d 1147, 1153 (9th Cir. 2018). "An

---

1 According to the California Department of Corrections and Rehabilitation website, Jeff Macomber is the current CDCR Secretary. See https://www.cdcr.ca.gov/about-cdcr/secretary/. This Court may take judicial notice of facts that are capable of accurate determination by sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201; see also City of Sausalito v. O'Neill, 386 F.3d 1186, 1224 n.2 (9th Cir. 2004) ("We may take judicial notice of a record of a state agency not subject to reasonable dispute."). Because Diaz is no longer the Secretary of CDCR, by operation of the Federal Rules, his successor, Jeff Macomber, is "automatically substituted as party" in his official capacity. Fed. R. Civ. P. 25(d) (when officials are sued in their official capacity in federal court and they die or leave office, their successors automatically assume their roles in the litigation); see also Kohut v. Allison, No. 1:20-cv-1584 JLT CDB P, 2023 WL 11822206, at *12, 2023 U.S. Dist. LEXIS 238808, at *30 n.11 (E.D. Cal. June 30, 2023). The undersigned will direct the Clerk of the Court to make this substitution on the docket.

'official capacity' lawsuit is simply another way of pleading an action against the employing entity." Shields v. Cannon, No. 2:11-cv-3185 JAM AC, 2015 WL 1258536, at *21, 2015 U.S. Dist. LEXIS 33802, at *55 (E.D. Cal. Mar. 18, 2015).

In their motion to dismiss, defendants argue that the court should dismiss plaintiff's claim against Diaz because plaintiff has not alleged that Diaz was personally involved in any constitutional violation. ECF No. 25-1 at 11. In opposition, plaintiff responds that he was not required to allege personal involvement since he is only suing Diaz in his official capacity for declaratory relief. ECF No. 28 at 11. In reply, defendants argue that even if plaintiff if suing Diaz in his official capacity and only seeking declaratory relief, he must still plead the elements of the underlying cause of action. ECF No. 30 at 3, 4.

While defendants are correct that declaratory relief can only be granted where a plaintiff establishes a violation of his rights, their argument confuses the standards for an Eighth Amendment violation with the pleading requirements applicable under § 1983 to claims for damages. The Eighth Amendment issue will be addressed in the subsequent section of this discussion. The personal involvement requirement is not an element of an Eighth Amendment violation, but an element of individual liability under § 1983. See Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998) ("Liability under § 1983 must be based on the personal involvement of the defendant").

Plaintiff is correct in that, in an official capacity suit, it is not necessary to allege personal involvement by the named official if plaintiff can identify an unconstitutional law or policy and the named official can appropriately respond for the entity. See Colwell v. Bannister, 763 F.3d 1060, 1070 (9th Cir. 2014) (marks and citations omitted) ("[T]he current NDOC Director is still a proper defendant in [plaintiff's] claim for injunctive relief 'because he would be responsible for ensuring that injunctive relief was carried out, even if he was not personally involved in the decision giving rise to the plaintiff's claims.'"); Hartmann v. California Dep't of Corr. & Rehab., 707 F.3d 1114, 1127 (9th Cir. 2013) (citation omitted) (a plaintiff seeking prospective declaratory or injunctive relief "against a state is not required to allege a named official's personal involvement in the acts or omissions constituting the alleged constitutional violation."). Instead,

to state an official capacity claim against a state official, a plaintiff must (1) identify and challenge an unconstitutional law or policy, Hartmann, 707 F.3d at 1127; (2) name the official or officials within the entity who can appropriately respond to the challenged law or policy, id.; and (3) establish that the policy was the moving force behind the violation of his constitutional rights, Kentucky v. Graham, 473 U.S. 159, 166 (1985).

Here, plaintiff seeks a declaratory judgment "declaring that it is a violation of the Eighth Amendment prohibition against cruel and unusual punishment for [CDCR not to] screen-out from NDPF housing active GP gang members, Southern Hispanics, Sleepers, EME, and Predators" because they "all pose a well-known and documented risk to the safety of PC/SNY inmates such as Plaintiff who is housed in an NDPF." ECF No. 17 at 15. Plaintiff has identified a CDCR policy he alleges is unconstitutional. Id. at 11. Plaintiff has also identified an official, the CDCR Secretary, who is a proper defendant because that official is responsible for the implementation of the alleged unconstitutional policy and can remedy the policy if it is deemed unconstitutional. Id.; see Lujan v. Hixon, No. 1:24-cv-0187 SAB P, 2024 WL 2274444, at *5, 2024 U.S. Dist. LEXIS 90195, at *13 (E.D. Cal. May 20. 2024) (citation omitted) ("The proper defendant for injunctive relief in a suit seeking implementation of CDCR policy is the CDCR Secretary in an official capacity."). Plaintiff also alleges that the policy is the moving force behind the constitutional violation, because his safety would not be at risk but for the NDPF policy and its lack of screening.

As noted above, plaintiff must also present a viable claim that the policy amounts to deliberate indifference to inmate safety under the Eighth Amendment. See Hartmann, 707 F.3d at 1127 (plaintiff must identify and challenge an unconstitutional law or policy); Dougherty, 654 F.3d at 900 (for a claim against an entity, the plaintiff must establish that the policy amounts to deliberate indifference to the plaintiff's constitutional right). Accordingly, the undersigned now turns to the sufficiency of plaintiff's substantive constitutional claim.

## VI. Eighth Amendment

"[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994) (quotation marks and citations

omitted). "[A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" Id. at 834 (citations omitted). Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement. Rish v. Johnson, 131 F.3d 1092, 1096 (9th Cir. 1997). Speculative fear of harm at the hands of other prisoners does not constitute a sufficiently substantial risk of harm to future health and safety. See, e.g., Williams v. Wood, 223 Fed. Appx. 670, 671 (9th Cir. 2007) (citing Farmer, 511 U.S. at 842). Second, "'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.' To violate the Cruel and Unusual Punishments Clause, a prison official must have a 'sufficiently culpable state of mind,'" "one of 'deliberate indifference' to inmate health or safety." Id. (citations omitted).

A. Constitutionality of NDPF Policy

A challenge to the constitutionality of a policy can be mounted as a facial challenge or an "as applied" challenge. See Wright v. Incline Village General Improvement Dist., 665 F.3d 1128, 1133 (9th Cir. 2011). Here, because it is not clear whether plaintiff is making one or both challenges, the undersigned addresses both.

1. Facial Challenge

To prevail on a facial constitutional challenge, plaintiff must establish that the policy is "unconstitutional in every conceivable application." Wright, 665 F.3d at 1133. "A facial challenge to a [policy] is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the [policy] would be valid. The fact that the [policy] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid." United States v. Salerno, 481 U.S. 739, 745 (1987).

Defendants argue that that the NDPF policy is not unconstitutional on its face where "[n]o court presented with these constitutional claims has held the NDPF policy is unconstitutional." ECF No. 30 at 5. However, defendants overstate the relevance of the three cases they rely upon,

see id., each of which involved allegations that were found insufficient to state a claim that the NDPF policy was unconstitutional. None of the cited cases involved a ruling on the merits of the constitutional question. See Montalvo v. Diaz, No. 3:19-cv-0363 CAB JLB, 2020 WL 3469365, at *7, 2020 U.S. Dist. LEXIS 111651, at *25-26 (dismissing with leave to amend Eighth Amendment claims against two defendants, because plaintiff failed to allege sufficient factual content to draw an inference that defendants acted with deliberate indifference to plaintiff's safety in implementing the NDPF policy); Mendez v. Diaz, No. 1:19-cv-1759 BAM PC, 2020 WL 1974231 at *5, 2020 U.S. Dist. LEXIS 72769 at *13 (on screening, dismissing Eighth Amendment claim where plaintiff had not alleged sufficient facts to demonstrate the NDPF policy would always violate the Eighth Amendment); Williams v. Allison, No. 1:19-cv-0371 BAM PC, 2021WL 5450201, at *7, 2021 U.S. Dist. LEXIS 225344, at *18 (at the screening stage, plaintiff failed to allege that the NDPF policy violated his rights where the harm was a result of the action of specific individual defendants, rather than the implementation of the policy). A finding that a plaintiff has failed to state a claim is not equivalent to a holding on the merits that the NDPF policy is not unconstitutional.

Nevertheless, to the extent plaintiff intends to mount a facial challenge, he fails. Plaintiff has not alleged any facts demonstrating that the NDPF policy always violates the Eighth Amendment, no matter who or what yards the policy is applied to. See generally ECF No. 17. Moreover, as defendants point out, at least one court has found summary judgment for defendants to be appropriate in a similar case because "Consolidated Plaintiffs have not demonstrated that GP inmates, including Consolidated Plaintiffs, are at risk of serious harm if housed on an NDPF, much less that Defendants were aware of a risk." Cruz v. Diaz, No. 19-cv-1974 JST, 2022 WL 20184653, at *15, 2022 U.S. Dist. 243246 at *48 (N.D. Cal. July 25, 2022). A facial challenge inevitably fails where the NDPF policy has been found constitutional as applied to some individuals, because plaintiff would not be able to establish that there is no set of circumstances under which the policy could be valid. See Wright, 665 F.3d at 1134 ("if we find that the [policies] are constitutional as applied to [plaintiff], the facial challenge also fails").

////

2. As Applied Challenge

To prevail on an as applied challenge, plaintiff must show that the policy is unconstitutional as applied to himself. Wright, 665 F.3d at 1133. A policy is unconstitutional as applied "when it operates to deprive an individual of a protected right although its general validity as a measure enacted in the legitimate exercise of state power is beyond question." Little v. Streater, 452 U.S. 1, 16 (1981) (citation omitted). In other words, plaintiff must allege that his individual circumstances make the general application of the NDPF policy unconstitutional. See Flores v. Diaz, No. 1:19-cv-1357 AWI GSA PC, 2020 WL 5235687, at *5, 2020 U.S. Dist. LEXIS 160617, at *12 (E.D. Cal. Sept. 2, 2020); Mendez, 2020 WL 1974231 at *5, 2020 U.S. Dist. LEXIS 72769 at *13-14.

As previously noted, plaintiff alleges that the CDCR Secretary, in the Secretary's official capacity, has placed plaintiff at risk of serious harm or injury by placing him in an NDPF without screening out GP EME and Southern Hispanic gang members, Sleepers, and Predators who pose a serious risk of harm to him because he is an ex-gang member who dropped out, has been debriefed, and was previously attacked and endorsed for protected custody. ECF No. 17 at ¶¶ 1, 3-4, 8-11, 13-19, 22-25, 27. For the reasons stated below, plaintiff has adequately alleged an objectively sufficiently serious risk of harm to himself, and that the CDCR Secretary, in the Secretary's official capacity, was aware of the serious risk of harm to plaintiff's health and safety.

a. Sufficiently Serious Deprivation

i. Parties' Positions

Defendants argue that plaintiff has not alleged a sufficiently serious threat to his safety where "the only allegations that he faces a specific threat is that, upon his transfer to a NDPF yard at Chuckawalla, he witnessed other alleged SNY inmates being attacked by alleged GP gang members." ECF No. 25-1 at 10-11. Relying primarily on Mendez, defendants argue that the risk of harm to plaintiff is speculative because (1) plaintiff does not identify the inmate attackers or victims, specify how he knows they are GP or SNY inmates, or explain how he knows the reasons for the alleged attacks, id. at 15; (2) plaintiff's claim of daily imminent danger of attack, based on "information and belief" that every GP gang member assigned to an NDPF will identify, attack

and if possible kill him, is belied by the fact that plaintiff was not attached during the 725 days which elapsed between his transfer and the filing of his FAC, id.; and (3) plaintiff does not allege that the gang that previously attacked him exists at his current institution, id. at 16; see also ECF No. 30 at 6, 15.

Relying primarily on Kester v. Diaz, No. 19-cv-4205 JST, 2019 WL 3997483, 2019 U.S. Dist. LEXIS 144018 (N.D. Cal. Aug. 23, 2019), plaintiff responds that he pleaded a credible threat based on his "individualized characteristic[,] which expose him to a pervasive risk of harm from active GP EME, Southern Hispanic, sleepers, and predators," and that he was previously attacked based these individualized characteristics. ECF No. 28 at 13; see also id. at 19.

ii. Analysis[2]

In Mendez, the court concluded on screening that "Plaintiff ha[d] not alleged any facts to support his conclusory allegations that the implementation of the NDPF policy would place Plaintiff at serious risk of harm or injury" because he "ha[d] not alleged that he ha[d] any known enemies, or that he was threatened with an assault by any person or group, that would have been, or were housed, at the Avenal State Prison NDPF yard that Plaintiff was, or would have been, housed at." Mendez, 2020 WL 1974231 at 5, 2020 U.S. Dist. LEXIS 72769 at *14. In contrast, in Kester, the court granted an ex parte motion for a temporary restraining order enjoining defendants from placing plaintiff in an NDPF yard because plaintiff had demonstrated that he was at risk of irreparable injury[3]—severe assault or death—if placed in an NDPF yard. Kester, 2019 WL 3997483 at *5; 2019 U.S. Dist. LEXIS 144018 at *10. There, plaintiff alleged, among other things, that: he was a sex offender and gang drop-out; he helped law enforcement obtain convictions for two GP inmates; two GP inmates had offered a bounty on his death; and while in

---

[2] Although Mendez and Kester involved the *sua sponte* screening process for pro se prisoner claims or temporary restraining orders, rather than adjudication of a motion to dismiss, they offer useful guidance on the issue before this court: whether plaintiff's factual allegations establish an objectively sufficiently serious threat to plaintiff's safety from placement in an NDPF yard. See e.g., Montalvo, at *5-7 (discussing Mendez and Kester in the deliberate indifference analysis of a motion to dismiss).

[3] Plaintiff is correct that to seek a declaratory judgment he does not need to allege or demonstrate irreparable injury, see Steffel v. Thompson, 415 U.S. 452, 472-73 (1974), however, he still needs to allege an objectively sufficiently serious deprivation to state a deliberate indifference claim.

custody, he had been a victim of two violent attacks, which led to his endorsement of SNY housing for protective custody purposes. Kester, 2019 WL 3997483 at *3, 5; 2019 U.S. Dist. LEXIS 144018 at *7, 12.

The undersigned finds that plaintiff's allegations bring this case closer to Kester than to Mendez. Here, plaintiff has alleged more specific circumstances than the plaintiff in Mendez to raise the risk of harm above the speculative level. As discussed above, plaintiff alleges that: while incarcerated, the prison gang known as EME ordered an attack on plaintiff, ECF No. 17 at ¶ 1; plaintiff was attacked by members of the Southern Hispanics prison gang affiliated with the EME, id.; after his attack, he was placed into protective custody and classified as an SNY inmate, id.; SNY inmates, include inmates with verified safety concerns and ex-gang members who have dropped out, been debriefed or validated as inactive,"[4] id. at ¶¶ 14, 24(c); gangs consider debriefers to be "rats" and "snitches," id. at ¶¶ 19, 24(c); plaintiff is an ex-gang member who dropped out, has been debriefed, and provided adverse information about gangs to authorities, id. at ¶¶ 23, 24(c); he remained in SNY housing until June 2021 (for 19 years), when he was transferred to an NDPF, id. at ¶¶ 1, 13; despite the transfer from SNY to NDPF, the SNY designation is for life and plaintiff is therefore at ongoing risk of harm or death, id. at ¶ 24(i); the NDPF policy "fails to identify and screen-out from the NDPF active GP gang affiliates, Sleepers, and Predators, whom [sic] adhere to a gang code/prison politics which compels them to harm and if possible kill all inmates *such as Plaintiff* who have been designated as SNY at any point in time during their incarceration, id. at ¶ 25 (emphasis added); "any inmate who informed CDCR staff that they do not wish disassociate from an STG was nevertheless forced onto an NDPF," id. ¶ 11;

---

[4] "Debriefing is a formal process by which a Security Threat Group (STG) coordinator/investigator determines whether an offender has abandoned STG affiliation and dropped out of a STG." Cal. Code Regs, tit.15 § 3000. Security Threat Group (STG) means

> any ongoing formal or informal organization, association, or group of three or more persons which has a common name or identifying sign or symbol whose members and/or associates, individually or collectively, engage or have engaged, on behalf of that organization, association or group, in two or more acts which include, planning, organizing, threatening, financing, soliciting or committing unlawful acts, or acts of misconduct."

Id.

two weeks after he was transferred to NDPF housing, he witnessed three separate incidents where GP inmates attacked SNY inmates in one day, id. at ¶13; and since his transfer to NDPF until the date of the filing of his FAC, June 23, 2023, "each time a GP active gang member is placed into CVSP's NDPF he immediately attacks the first NDPF/SNY inmate he encounters, thus placing Plaintiff's safety in danger on a daily basis," id.

That plaintiff does not identify the attackers or victims by name or indicate how he knows they were GP or SNY inmates does not undercut his allegations. The court can and does infer that in the normal course of prison interactions, plaintiff was able to discern the attackers were GP inmates and the victims were SNY inmates and that the attacks were because of their adverse designations. Moreover, defendants do not cite any authority indicating that this level of specificity is necessary to avoid dismissal of an Eighth Amendment claim.

Additionally, the lack of allegations of an attack since plaintiff's placement in an NDPF could simply mean that he has been lucky. In and of itself, this does not negate plaintiff's substantial allegations of risk of harm. Lastly, plaintiff has alleged sufficient facts for the court to infer that EME and Southern Hispanics are gangs that permeate the CDCR prison system. See ECF No. 17 at ¶¶ 16, 17 (Southern Hispanics and EME are STG-I and STG-II prison gangs).[5]

Accordingly, construing the pleading in the light most favorable to the party opposing the motion and resolving all doubts in the pleader's favor, the undersigned finds that plaintiff has sufficiently pleaded that he is incarcerated under conditions posing an objectively sufficiently substantial risk of serious harm.

///

////

---

[5] Security Threat Group I (STG-I) and Security Threat Group II (STG-II) are "term[s] used to identify and prioritize the level of threat the group presents that *affects the safety and security of the institution and public safety*." Cal. Code Regs, tit.15 § 3000. "STG-I designation will be reserved for STGs that pose the greatest of these threats. STG-I designation will include, but may not be limited to, traditional prison gangs or similar disruptive groups or gangs that the department has certified to have *a history and propensity for violence and/or influence over subservient STGs*." Id. (emphasis added). "The STG-II designation may include, but is not limited to, traditional disruptive groups/street gangs." Id.

b. Deliberate Indifference

Defendants argue that conclusory allegations that CDCR Secretary knew or should have known of the danger to plaintiff are insufficient to state a cognizable claim for deliberate indifference, and that plaintiff cannot establish that the risk of serious harm was "sufficiently obvious" to the CDCR Secretary such that the Secretary "must have been aware" of it. ECF No. 25-1 at 10-11,13; ECF No. 30 at 4. In opposition, plaintiff responds that defendants are applying the wrong test to an official capacity claim for deliberate indifference, and that he has sufficiently alleged facts under the proper test. ECF No. 28 at 10-13.

For claims against a state official in their official capacity, it is not clear whether the test for deliberate indifference is subjective or objective. Helling v. McKinney, 509 U.S. 25, 36 (1993) ("On remand, the subjective factor, deliberate indifference, should be determined in light of the prison authorities' current attitudes and conduct, which may have changed considerably since the judgment of the Court of Appeals."); Farmer, 511 U.S. 825, 845-46 & n.9 (suggesting there is a subjective factor for a claim for prospective relief); Mendiola-Martinez v. Arpaio, 836 F.3d 1239, 1248 (9th Cir. 2016) (citation omitted) (recognizing that the Ninth Circuit has held that an objective standard applies to claims against entities "for the practical reason that government entities, unlike individuals, do not themselves have states of mind"). However, because an official capacity claim is another way of pleading an action against an entity, and an entity cannot have a state of mind, it follows that the test is an objective one. See Mendiola-Martinez, 836 F.3d at 1248; see also Thomas v. Cox, 2018 WL 771319, at *3, 2018 U.S. Dist. LEXIS 19816, at *6 (D. Nev. Feb. 7, 2018) (in an official capacity claim, the question is not what the individual defendants knew, but rather whether the state entity that the defendant represents knew and disregarding the substantial risk of serious harm to the prisoner). Nonetheless, given the lack of clarity, the undersigned will consider both standards. For the reasons that follow, the undersigned finds that plaintiff has sufficiently pled facts to support an inference that defendant CDCR Secretary had actual knowledge, and therefore has satisfied either test.

To satisfy the subjective standard, the official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw

the inference." Farmer, 511 U.S. at 837. Plaintiff can establish this by showing that implementation of the policy created a risk of harm that was "sufficiently obvious" to the CDCR Secretary that he "must have known about it." Id. at 842 (internal quotations omitted). To satisfy the objective standard for entities, a § 1983 plaintiff must "establish that the facts available to [entity] policymakers put them on actual *or constructive notice* that the particular omission [or act] is substantially certain to result in the violation of the constitutional right of their citizens." Castro v. County of Los Angeles, 833 F.3d 1060, 1076 (9th Cir. 2016) (emphasis in original) (quoting City of Canton v. Harris, 489 U.S. 378, 390 (1989)).

Here, plaintiff alleges that "pursuant to multiple memorandums and court decisions, [d]efendant CDCR is well aware that inmates whom [sic] have been given the designation 'SNY' have safety concerns and should be segregated from GP active gang members, STGs, Sleepers, and Predators." ECF No. 17 at ¶ 14. Among other memoranda and cases, Plaintiff cites Toscano v. Lewis, 2015 WL 4940832, 2015 U.S. Dist. LEXIS 109810 (N.D. Cal. Aug. 19, 2015) and "Sensitive Needs Yard Placement Consideration for Validated Prison Gang Dropouts" dated February 14, 2012. Id. In Toscano, a prisoner brought a § 1983 suit against more than 80 CDCR employees in their individual and official capacity, including the CDCR director. Toscano v. Lewis, No. 3:12-cv-05893 EMC, Amended Complaint, Docket 20 at 1, 4-8. On summary judgment, the court stated the following undisputed facts: within the California prison system "[a]n SNY is a yard reserved for inmates who have specific, verified safety concerns, and for inmates who have completed the gang debriefing process and are in need of protective housing"; "[i]nactive gang members and associates who have not debriefed and have not been designated as gang drop outs generally cannot be placed in an SNY"; and, according to a CDCR Division of Adult Institutions memorandum dated February 14, 2012, "[t]his policy is essential to safeguard inmates housed in sensitive needs yards, including debriefers," "there is a very real danger that 'sleeper' inmates who are still participating in gang activity will try to gain access to sensitive needs yards to carry out assaults on debriefers on behalf of prison gangs. Gangs consider debriefers to be 'snitches[,]'" and "CDCR must ensure that 'sleeper' inmates do not get transferred to sensitive needs yards, because they will harm if not kill inmates there who have

debriefed." Toscano, 2015 WL 4940832, at *3-4, 2015 U.S. Dist. LEXIS 109810, at *10-13. Moreover, plaintiff alleges that defendant CDCR Secretary was put on notice of the risk to plaintiff and other similarly situated individuals' health and safety "via exhaustion of inmate administrative grievances, phone calls, emails, petitions, public [and] written comments within [the NDPF policy regulations], and other means of communication from concerned citizens, friends, and family of CDCR prisoners subject to the NDPF housing." ECF No. 17 at ¶ 31.

For all these reasons, plaintiff has sufficiently stated an Eighth Amendment claim against the CDCR Secretary, now Jeff Macomber, in the Secretary's official capacity.

VII. Mootness

When plaintiff filed the FAC, he was housed in an NDPF at CVSP. See ECF No. 17 at 1, 3. Defendants now argue that plaintiff's claim for declaratory relief is moot because, in his opposition brief, plaintiff noted that his facility was being closed and that he was going to be transferred to a different facility and could not allege that he would once again be subject to the NDPF policy. ECF No. 30 at 6-7.

Subsequently, plaintiff was transferred to CDCR's Substance Abuse Treatment Facility. ECF No. 31 (notice of change of address). Because plaintiff alleges that the NDPF policy has been implemented system wide across all CDCR prisons, his claim for declaratory relief based on the NDPF policy is not moot. See Nelson v. Heiss, 271 F.3d 891, 897 (9th Cir. 2001) (the transfer of an inmate to a new prison will usually moot a challenge to conditions at a "particular facility"); cf. Walker v. Beard, 789 F.3d 1125, 1132 (9th Cir. 2015) (when an inmate attacks a "system wide" policy, his transfer to a new prison will not moot his conditions of confinement claims).

VIII. Plain Language Summary for this Order for a Pro Se Litigant

The magistrate judge is recommending that CDCR be dismissed as a defendant, because, as you acknowledged, the CDCR cannot be sued. It is recommended that your claim for declaratory relief, on grounds that the NDPF policy violates the Eighth Amendment, proceed against the CDCR Secretary in his official capacity.

////

IX. Conclusion

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' Request for Judicial Notice (ECF No. 25-2) is DENIED; and

2. Ralph Diaz is substituted for the current CDCR Secretary, Jeff Macomber. The Clerk of the Court is directed to update the docket accordingly.

IT IS HEREBY FURTHER RECOMMENDED that:

1. Defendants' motion to dismiss (ECF No. 25) be GRANTED in part and DENIED in part as follows:

    a. Granted as to plaintiff's Eighth Amendment claim against defendant CDCR;

    b. Denied as to plaintiff's Eighth Amendment claim against defendant CDCR Secretary in their official capacity.

2. Dismissal of CDCR should be with prejudice.

3. The Clerk of the Court be directed to substitute defendant Jeff Macomber for Ralph Diaz.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: October 22, 2024

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE